IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

THE UNITED STATES OF AMERICA
and THE STATE OF MICHIGAN
ex rel. SUSAN K. HENDRICKS, MD

Case No. 1:13-cv-294

AND

Hon. Robert J. Jonker

SUSAN K. HENDRICKS, M.D.,

     Plaintiff-Relator,

v.

BRONSON METHODIST HOSPITAL
INC., a Michigan Corporation,

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS COUNTS I, II, IVAND
IX OF RELATOR'S FIRST
AMENDED COMPLAINT**

AND

BRONSON HEALTHCARE GROUP,
INC., a Michigan Corporation,

**ORAL ARGUMENT
REQUESTED**

     Defendants.

_____/

Julie A. Gafkay (P53680)
Gafkay & Gardner, PLC
Attorneys for Plaintiff/Relator
175 S. Main St.
Frankenmuth, MI  48734
(989) 652-9240
(989) 652-9249 FAX
jgafkay@gafkaylaw.com

Howard A. Newman
Newman Law Offices
Attorneys for Plaintiff/Relator
888 16th Street, NW, Suite 800
Washington, D.C.  20006
(202) 544-8040
(202) 544-8060 FAX
howard@newmanlawoffices.com

Alan G. Gilchrist (P23408)
Timothy P. Burkhard (P73210)
The Health Law Partners, P.C.
Attorneys for Defendants
29566 Northwestern Highway, Suite 200
Southfield, MI 48334
(248) 996-8510
(248) 996-8525 FAX
agilchrist@thehlp.com
tburkhard@thehlp.com

Craig H. Lubben (P33154)
MILLER JOHNSON
Attorneys for Defendants
100 W. Michigan Ave., Suite 200
Kalamazoo, MI  49007
(269) 226-2958
(269) 978-2958 FAX
lubbenc@millerjohnson.com

Jeffrey M. Schroder
MI Dept Attorney General
Attorney for the State of Michigan
P.O. Box 30218
E. Lansing, MI  48909
(517) 241-6511
schroderj1@michigan.gov

Adam B. Townshend
U.S. Attorney
Attorney for the United States of America
330 Ionia Ave., NW
P.O. Box 208
Grand Rapids, MI 49501
(616) 456-2404
(616) 456-2510 FAX
adam.townshend@usdoj.gov

/

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS I, II, IVAND IX OF RELATOR'S FIRST AMENDED COMPLAINT

## ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

QUESTIONS PRESENTED ................................................................. iv

CONTROLLING AUTHORITY ............................................................. v

INTRODUCTION ............................................................................ 1

STATEMENT OF THE FACTS ............................................................ 2

STANDARD OF REVIEW .................................................................. 4

    Standard for Motion to Dismiss for Failure to State a Claim ................................... 4

    Standard for Motion to Dismiss for Failure to Comply With Rule
    9(b)/MCR 2.112(B)(1).......................................................................... 4

ARGUMENT .................................................................................. 5

    I. Counts I, II and IV Are Not Pled With Specificity As Required .......................... 5

        A. Allegations That Physicians Were Unqualified To Read Sonograms ...... 9

        B. Allegations That Defendants Submitted False Statements To The
        Government. ............................................................................... 12

    II. Count IX Fails To State A Claim Because Plaintiff's Purported Public
    Policy Claim Is Not Based Upon A Law That Conveys Rights On An
    Employee Or Is Preempted By A Specific Statutory Remedy.......................... 15

CONCLUSION ............................................................................... 17

# TABLE OF AUTHORITIES

## Case Law

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................ 4, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 4

*Chesbrough MD v. VPA, P.C.*,655 F.3d 461 (6th Cir. 2011) ..................... 8, 9, 10, 11, 12, 13

*Coffey v. Foamex, L.P.*, 2 F.3d 157 (6th Cir. 1993)..................................................... 5

*Dudewicz v. Norris Schmid, Inc.*, 443 Mich. 68; 503 N.W.2d 645 (1993)........................ 16

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988)..................... 5, 14

*Mikes v. Straus*, 274 F.3d 687 (2nd Cir. 2001)................................................ 10, 11, 12

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006)................... 5, 6, 7, 8

*State ex rel Gurganus v. CVS Caremark Corp*, unpublished per curiam decision of
     the Court of Appeals, decided January 22, 2013 (Docket Nos. 299997,
     299998, 299999)...................................................................................... 4, 6

*Sucholdolski v. Michigan Consolidated Gas Company*,
     412 Mich. 692; 316 N.W.2d 710 (1982) ................................................. 15, 16

*U.S. ex rel Augustine v. Century Health Servs., Inc.*, 289 F.3d 409 (6th Cir. 2002) ............ 13

*U.S. ex rel Bledsoe v. Community Health Systems, Inc.*,
     342 F.3d 634 (6th Cir. 2003) ....................................................................... 5, 6

*U.S. ex rel Bledsoe v. Community Health Systems, Inc.*,
     501 F.3d 493 (6th Cir. 2007) ..................................................... 5, 6, 7, 8, 14, 15

*U.S. v. Bon Secours Cottage Health Servs.*, 665 F.Supp.2d 782 (E.D. Mich. 2008).............. 3

*U.S. ex rel Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211 (10th Cir. 2008)....... 12, 13

*U.S. ex rel Hobbs v. MedQuest Associates Inc.*, 711 F.3d 707 (6th Cir. 2013) .............. 11, 12

*U.S. ex rel Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008)...................... 7, 8, 9

*U.S. ex rel SNAPP Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008)..................... 7, 14

*U.S. ex rel Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997)....... 5

*U.S. ex rel Wilkins v. United Health Grp., Inc.*, 659 F.3d 295 (3rd Cir. 2011).................... 12

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*,
    290 F.3d 1301 (11th Cir. 2002) ……………………………………………….... 7

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, No. 06-11848, 2009 WL 960482
    (E.D. Mich. April 7, 2009) …………………………………………………. 7

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505 (6th Cir. 2010) ………… 7, 8

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)………………………….. 4, 5

*Zine v. Chrysler Corp.*, 236 Mich.App. 261; 600 N.W.2d 384 (1999)……………………….. 5

**Statutes**

31 U.S.C. § 3729……….. ………………………………………………………… 1

MCL 400.603 *et seq*………………………………………………………………. 1

**Court Rules**

Fed.R.Civ.P. 9(b) ………………………………………………………… *passim*

Fed.R.Civ.P. 12(b)(6) ……………………………………………………… 2, 4

MCR 2.112(B)(1) ……………………………………………………………... *passim*

## QUESTIONS PRESENTED

I.    SHOULD COUNTS I AND II OF RELATOR'S COMPLAINT, ALLEGING VIOLATION OF THE FEDERAL CIVIL FALSE CLAIMS ACT, 31 U.S.C. § 3729, BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 9(b)?

    Defendants say:    Yes.

    Plaintiff says:    No.


II.    SHOULD COUNT IV OF RELATOR'S COMPLAINT, ALLEGING VIOLATION OF THE MICHIGAN MEDICAID FALSE CLAIMS ACT, MCL 400.603, ET SEQ., BE DISMISSED FOR FAILURE TO COMPLY WITH MCR 2.112(B)(1)?

    Defendants say:    Yes.

    Plaintiff says:    No.

III.    SHOULD COUNT IX OF RELATOR'S COMPLAINT, ALLEGING TERMINATION IN VIOLATION OF PUBLIC POLICY BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED?

    Defendants say:    Yes.

    Plaintiff says:    No.

## CONTROLLING AUTHORITY

*Dudewicz v. Norris Schmid, Inc.*, 44 Mich. 68; 503 N.W.2d 645 (1993);

*Sanderson v. HCA-The Healthcare Company*, 447 F.3d 873 (6th Cir. 2006);

*U.S., ex rel Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493 (6th Cir. 2007); and

*U.S. ex rel Hobbs v. MedQuest Associates Inc.*, 711 F.3d 707 (6th Cir. 2013).

## INTRODUCTION

This brief is filed in support of Defendants Bronson Methodist Hospital, Inc. (the "Hospital") and Bronson Healthcare Group, Inc.'s (the "Healthcare Group") (collectively the "Defendants") Motion to Dismiss Counts I, II, IV and IX of Relator's First Amended Complaint.

This action was commenced pursuant to the Federal False Claims Act (31 U.S.C. § 3729) (the "FFCA") and the Michigan Medicaid False Claims Act (MCL 400.603 *et seq*) (the "MFCA"). These statutes contain special provisions ("*qui tam*" provisions) which allow a private individual to stand in the shoes of the government and bring an action alleging fraud on the government. An individual who brings such an action is referred to as a "relator". A *qui tam* case also has special procedural requirements, which require that a case be filed under seal, not immediately served on a defendant and presented to the Federal and State governments to allow those governmental entities to investigate the merits of the action and decide if they want to intervene and proceed with the case. The government can intervene and prosecute the case or it can decline intervention and the relator can proceed with the action on their own. Once the government makes a decision as to its intervention, the case is unsealed and served on the defendant(s). Even if the government does not intervene, it remains a real party in interest and can, at any time, choose to intervene and take over a case.

In this case, a 12-Count Complaint (Dkt. #1) was filed on March 19, 2013 by Susan K. Hendricks, M.D. (the "Relator" or "Plaintiff"). After a period for investigation, neither the U.S. nor the State of Michigan decided to intervene in the case. On November 1, 2013, the case was unsealed (Dkt. #23). On December 23, 2013, a summons was issued as to the Hospital and the Healthcare Group (Dkt. #32). Both the Hospital and Healthcare Group were served with the Complaint on January 17, 2014. Defendants filed a Motion and Brief to Dismiss Counts I-IV, IX

and XII on February 7, 2014 (Dkt. #36 and 37).  Plaintiff responded by filing her First Amended Complaint ("FAC") on February 28, 2014 (Dkt. #42).

The FAC adds a bit of detail in that she inserted allegations about the "CDH Case" (FAC ¶¶ 35-40; 42; 44-45) and names by pseudonym three physicians (FAC ¶ 38) (and subsequently informed Defendants of the names of the three identified physicians).  Missing are any allegations that the "CDH Case" involved a patient who was insured by a government payor or that the Hospital submitted or caused to be submitted any bill to a government payor.

Relator also adds allegations about the billing process of Defendants (FAC ¶¶ 47-53). However, most important, Relator admits in footnote 6 that she "**neither has possession of any bill actually paid (from any source) nor actual knowledge of any payment (from any source) of any bill**." (emphasis added).  This admission forecloses her claims of fraud on the government.

The FAC further removes Relator's allegations of a conspiracy among the Defendants (formerly Count III) and allegations that Defendants defamed Relator (formerly Count XII).

 Despite the additional details provided in the FAC, it is clear that Relator has failed to state a claim upon which relief can be granted (Fed.R.Civ.Pro. 12(b)(6)) as it relates to Count IX and has failed to plead with specificity as required for allegations of fraud found in Counts I, II and IV (Fed.R.Civ.Pro. 9(b) and MCR 2.112(B)(1)).  Therefore, Defendants respectfully request that the Court dismiss Counts I, II, IV and IX of the FAC.

## STATEMENT OF THE FACTS

The Relator is a maternal fetal medicine physician, who worked for Defendants for a period of approximately eight years (from approximately March 2003 until May 2011) (FAC Preliminary Statement; ¶¶ 1; 23; 26).  The Healthcare Group is "a tertiary healthcare system with

multiple service locations, including the Hospital…" (FAC ¶ 5).   The Hospital is located in Kalamazoo (FAC ¶ 4).   According to Relator, the Healthcare Group and the Hospital "are so intertwined that neither is distinguishable from the other" (FAC ¶ 25) and that "correspondence from the Hospital was on [Healthcare Group] letterhead" (FAC ¶ 25).   Relator worked for both the Healthcare Group and the Hospital (who she collectively refers to as Defendants throughout her FAC) (FAC Preliminary Statement; ¶¶ 1; 26; 28).   Relator's employment with the Defendants was terminated on or around May 18, 2011 (FAC ¶ 26).

Relator alleges in her FAC that the Defendants violated the FFCA (Counts I and II) and the MFCA (Count IV)[1].   Relator claims that the Defendants defrauded the United States and the State of Michigan (collectively the "government") by incorporating a scheme whereby physicians would sign that they had reviewed and interpreted obstetric sonograms when they had not (FAC Preliminary Statement; ¶¶ 34; 69).   She also alleges that even if an obstetric sonogram was reviewed by a physician, the physician did not have the training and expertise necessary to interpret the results (FAC Preliminary Statement; ¶¶ 34; 69).   She further alleges that Defendants falsely certified that documents submitted to the government were accurate when they were not (FAC ¶ 74).

Relator also alleges she was improperly terminated in a number of counts, including Count IX.   Count IX alleges that she was discharged "in whole or in part for refusing or failing to violate the public policy of the State of Michigan and that of federal law." (FAC ¶ 117).

---

[1] The MFCA is substantially similar to the FFCA.  *See U.S. v. Bon Secours Cottage Health Servs.*, 665 F.Supp.2d 782, 783, n. 2 (E.D. Mich. 2008).

## STANDARD OF REVIEW

### Standard for Motion to Dismiss for Failure to State a Claim

When considering a motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff/relator and accept all well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 677-687; *Twombly*, 550 U.S. at 555-556. However, conclusory allegations are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 681.  A plaintiff/relator must provide the ground of entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 555 n. 3.

### Standard for Motion to Dismiss for Failure to Comply with Rule 9(b)/MCR 2.112(B)(1)

The Sixth Circuit has determined that claims under the FCA must comply with the requirements of Fed.R.Civ.P.9(b) ("Rule 9(b)") and, therefore, must be pled with particularity. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir.2003).  Rule 9(b) provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Michigan Court Rule 2.112(B)(1) likewise provides that allegations of fraud "must be stated with particularity."  Michigan courts have recognized that MCR 2.112(B)(1) applies to claims under the MFCA. *State ex rel Gurganus v. CVS Caremark Corp,* unpublished per curiam decision of the Court of Appeals, decided January 22, 2013 (Docket Nos. 299997, 299998, 299999). Given the similarity between Rule 9(b) and MCR 2.112(B)(1) and the similarity between the FFCA and the MFCA, it is also appropriate to look to federal cases for guidance in

evaluating Relator's state law claims of fraud. *Id.*, citing *Zine v. Chrysler Corp.*, 236 Mich.App. 261, 287 n. 12; 600 N.W.2d 384 (1999).

The purpose of Rule 9(b) is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). The Sixth Circuit interprets Rule 9(b) as requiring a *qui tam* relator to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz*, 341 F.3d at 563, citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–162 (6th Cir.1993). Put more simply: "[a]t a minimum, Rule 9(b) requires that the plaintiff[/relator] specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006), citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997). One part of the "who, what, when, where, and how" requires particular allegations that a false claim for payment was presented to the government. *U.S. ex rel Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 505 (6th Cir. 2007) ("*Bledsoe II*").

## ARGUMENT

### I.      Counts I, II And IV Are Not Pled With Specificity As Required.

The question before this Court in regard to Counts I, II and IV is whether Relator has complied with the pleading requirements of Rule 9(b) and MCR 2.112(B)(1) so that she can proceed with a *qui tam* action against the Defendants. Relator cannot seriously contest that the allegations of defrauding the government in the Complaint must comply with Rule 9(b) and MCR 2.112(B)(1) as the Sixth Circuit and Michigan law clearly require a False Claims case to comply with Rule 9(b) and/or MCR 2.112(B)(1). *See e.g. U.S., ex rel Bledsoe v. Community*

*Health Systems, Inc.* ("*Bledsoe I*"), 342 F.3d 634, 642-643 (6th Cir. 2003) ("a violation of the FCA constitutes an 'averment[ ] of fraud' for purposes of Rule 9(b), and a complaint alleging such a claim must state the circumstances surrounding the FCA violation with particularity."); *State ex rel Gurganus v. CVS Caremark Corp, supra.*

Binding Sixth Circuit case law makes it clear that a relator must provide at least one example of a specific false claim made to the government to meet the heightened requirements of Rule 9(b) (and by implication MCR 2.112(B)(1)) in order to proceed with an action. Relator admits she has no knowledge of any false claim made to the government (see FAC, ¶ 534, fn 6 – "Dr. Hendricks neither has possession of any bill actually paid (from any source) nor actual knowledge of any payment (from any source) of any bill."). Such an admission is fatal to her claims of fraud.

Relator's allegations of fraud against the government "must specifically allege the essential elements of fraud that constitute a violation of the [FCA] statute," which necessarily include "time, place and content" of the alleged misrepresentation. *U.S. ex rel Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 505 (6th Cir. 2007) ("*Bledsoe II*"). **A sufficient complaint for such fraud must allege the presentation of a false claim for payment to the government with particularity.** *Id.*

Rule 9(b) does not "permit a False Claim Act plaintiff merely to describe a private scheme in detail but then to allege simply ... that the claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir.2006). "[B]ecause the statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment'", the FCA Complaint must contain specific allegations

that the defendant "knowingly ask[ed] the Government to pay amounts it d[id] not owe." *Sanderson*, 447 F.3d at 877. Presentment of the fraudulent claim itself is "the sine qua non" of a FCA claim. *Id.* at 878 (quoting *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir.2002)). "A 'claim' at least requires a request or demand ... for money or property." *United States ex rel. Marlar v. BWXT Y–12, L.L.C,* 525 F.3d 439, 447 (6th Cir.2008).

The cases undeniably require a relator to allege with particularity a specific false claim submitted to the government.

In *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir.2008) ("*SNAPP I*"), the Sixth Circuit affirmed the district court's dismissal of a *qui tam* complaint that failed to plead even a single false claim with particularity, but vacated the district court's decision denying *SNAPP*'s motion to amend and remanded with instructions to the district court to consider *SNAPP*'s proposed amended complaint in light of the Sixth Circuit's holding in *Bledsoe II* that certain "complex and far reaching schemes" may be pleaded by means of "characteristic" or "illustrative" examples. 532 F.3d at 506. On remand, the district court again concluded that the amended complaint failed to plead a false claim, holding that "the 'listing' of sixty five contracts between Ford and the government did not then and does not now provide [the] Court with any evidence as to even a single claim for payment made by Ford to the government ...." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, No. 06–11848, 2009 WL 960482, at \*9 (E.D.Mich. April 7, 2009).

The Sixth Circuit affirmed the district court in *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505 (6th Cir.2010) ("*SNAPP II*"), clarifying that "none of the holdings of

*Bledsoe II* alter the **requirement that at least one claim be pleaded with specificity**" *Id.* at 514 (emphasis added).

In *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008), the plaintiff did not plead any facts regarding whether the alleged false claims were in fact submitted to the government. Instead, she relied on the general allegation, "[o]n information and belief," that the defendant submitted false claims to the government, and that the government paid the defendants a fee that was based in part on the purported false claims. *Id.* at 445–446. After finding that the relator failed to "identify [the] specific claims that were submitted to the United States," the complaint was dismissed pursuant to Rule 9(b). *Id.* at 446.

Recently, in *Chesbrough, MD v. VPA, P.C*, 655 F.3d 461 (6th Cir.2011), the Sixth Circuit had occasion to revisit and rely on its decisions in *Bledsoe II*, *Sanderson*, *SNAPP II* and *Marlar* to dismiss a FCA complaint that failed to plead with particularity that the allegedly false scheme there resulted in the actual presentment of false claims to the government for Medicare reimbursement. The relators in *Chesbrough* alleged that the defendant submitted claims to the government for, among other things, certain tests that were non-diagnostic and allegedly of no medical value and attached copies of five studies allegedly representative of the claims. *Id.* at 470. The Sixth Circuit held that, although the relators had alleged a fraudulent scheme with respect to such studies, they failed to allege with particularity any billings for those tests that were actually submitted to the government, and their lack of personal knowledge of the defendant's actual billing practices was fatal to any inference which might arise from the studies themselves. *Id.* at 472.

Finding that the relators did not have personal knowledge that claims for non-diagnostic tests were presented to the government and that they did not allege facts that strongly support an

inference that such billings were submitted, the *Chesbrough* complaint was dismissed for failure to satisfy Rule 9(b).

In this case, Relator alleges, nearly identical to the allegations in *Marlar,* that "[o]n information and belief, the Defendants billed … and request payment from, *inter alia,* the U.S. government and the State of Michigan" (FAC ¶ 53). She has no personal knowledge that claims were submitted to the U.S. government or the State of Michigan. She admits as much in the footnote to FAC ¶ 53, where she admits that she "neither has possession of any bill actually paid (from any source) nor actual knowledge of any payment (from any source) of any bill." The Sixth Circuit has a very clear requirement that at least one claim be pleaded with specificity. Relator cannot meet that requirement and admits as much. Therefore, her claims of fraud must be dismissed.

It is clear that Relator has failed to provide the specificity required by Rule 9(b) and MCR 2.112(B)(1) as to all of her claims of fraud and that Counts I, II, and IV must be dismissed for such failure.

### A. Allegations That Physicians Were Unqualified To Read Sonograms.

Even though the above forecloses all claims of fraud asserted by Relator, to the extent Relator alleges that Defendants fraudulently billed the government for sonograms reviewed by unqualified physicians, an equally compelling basis exists by which Relator's allegations in this regard must be dismissed. To the extent Relator is claiming that physicians who reviewed sonograms billed to the government were unqualified, she is venturing into the standard of care/quality of care arena. It is clear that the False Claims Act is not a vehicle to resolve standard of care/quality of care issues and that Relator's allegations cannot survive.

The leading case concerning the ability of a relator to assert standard of care/quality of care issues in an FCA case comes from the Second Circuit: *Mikes v. Straus*, 274 F.3d 687 (2nd Cir. 2001).  In *Mikes*, the relator alleged, among other things, that the care provided by the defendants failed to meet applicable medical standards.  The Second Circuit rejected that argument, finding that permitting *qui tam* plaintiffs to assert that a defendant's quality of care failed to meet medical standards would promote federalization of medical malpractice with the federal government or the *qui tam* relator replacing the aggrieved patient as plaintiff.  *Id.* at 700. The *Mikes* court further observed that "the courts are not the best forum to resolve medical issues concerning levels of care.  State, local or private medical agencies, boards and societies are better suited to monitor quality of care issues." *Id.*

The reasoning of *Mikes* has been adopted in the Sixth Circuit in the recent case of *Chesbrough MD v. VPA, P.C.*, 655 F.3d 461 (6th Cir. 2011).  In *Chesbrough*, the relator alleged that the defendants defrauded the government by submitting billings to the government for defective radiology studies.  *Id.* at 464.  Specifically, the relator alleged that x-ray studies and ultrasound studies did not meet industry standards established by the American College of Radiology and the Society for Vascular Ultrasound.  *Id.* at 467.  In affirming the trial court's dismissal of the complaint, the Sixth Circuit noted that "Medicare does not require compliance with an industry standard as a prerequisite to payment." *Id.* at 468.  "Thus, requesting payment for tests that allegedly did not comply with a particular standard of care does not amount to a 'fraudulent scheme' actionable under the FCA." *Id.*  Based on *Chesbrough*, it is clear that the Sixth Circuit has rejected the theory that a *qui tam* relator can prosecute standard of care/quality of care cases under the guise of an FCA lawsuit.

An even more recent case from the Sixth Circuit, *U.S. ex rel Hobbs v. MedQuest Associates, Inc.*, 711 F.3d 707 (6th Cir. 2013), follows *Mikes* and *Chesbrough,* and provides appropriate guidance for the instant matter.  In *MedQuest,* the United Stated intervened in the case which alleged that MedQuest used supervising physicians who had not been approved by the Medicare program and the local Medicare carrier to supervise the range of tests offered by the defendant and billed the government for the non-approved physician's supervision.  *Id.* at 710.  The trial court granted summary judgment in favor of the United States and found that the FCA was violated by billing the government for the review by non-approved physicians.  On appeal, the Sixth Circuit thoroughly discussed the regulations at issue and found that the regulations do not support FCA liability for failure to comply with supervising-physician regulations.  *Id.* at 715-717.  The Court also noted that the FCA was not an appropriate tool for ensuring compliance with technical and local program requirements.  *Id.* at 717.

In this case, Relator's claims that physicians were not qualified are especially tenuous.  She provides no law or regulation as to what qualifications are necessary to read and interpret sonograms.  She cites no federal Medicare or state Medicaid guidance indicating the training and expertise required to read sonograms before billing them to the government.  Essentially it is her opinion that the OB/GYNs are not qualified to interpret fetal ultrasounds.  Her only allegations regarding the lack of qualifications/expertise of the physicians are conclusory (FAC Preliminary Statement; ¶¶ 34; 39).  Such allegations are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 681.  In short, Relator has provided nothing which could support her theory that Defendants' physicians were unqualified or lacked expertise.

The Sixth Circuit, in *MedQuest*, refused to find liability under the FCA where tests were billed to the government when physicians who were unquestionably not even approved by

Medicare to supervise the tests performed the supervision. Certainly in this case, where the only allegation is that OB/GYNs were not qualified to read and interpret sonograms (allegations not entitled to a presumption of truth), there can be no liability under the FCA. Accordingly, Relator's allegations that physicians were not qualified or lacked expertise are insufficient to support a claim of liability under the FFCA or MFCA and must be dismissed.

### B. Allegations That Defendants Submitted False Statements To The Government.

Relator's allegations concerning false statements are clearly inadequate. She makes a passing reference to cost reports (FAC ¶ 22) and then alleges that the "Defendants have used a variety of false documents, including false submissions to the U.S. Government, to cause the U.S. Government to continue to pay and approve claims for reimbursement under the U.S. Government healthcare programs…" (FAC ¶ 74). What can be gleaned from the above vague and non-specific allegations is that Relator is attempting to assert a "false certification" theory of liability.

A false certification theory can be a valid theory under the FCA. In addition to obvious cases of fraud, as where a provider bills for procedures or services that were not rendered or not necessary, a claim may be false under a "false certification" theory, as "when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *MedQuest*, 711 F.3d at 714, citing *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3rd Cir.2011) and *Chesbrough*, 655 F.3d at 467. The success of a false certification claim depends on whether it is based on "conditions of participation" (which do not support an FCA claim) or on "conditions of payment" (which do support FCA claims). *Id.*, citing *Wilkins*, 659 F.3d at 309; *U.S. ex rel Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir.2008); *Mikes*, 274 F.3d at 701–02.

A false certification may be express or implied. In an express false certification, the defendant is alleged to have signed or otherwise certified to compliance with some law or regulation on the face of the claim submitted. *Id.*

Under an implied certification theory, a facially truthful claim can be construed as false if the claimant "violates its continuing duty to comply with the regulations on which payment is conditioned." *Id.*, citing *Chesbrough*, 655 F.3d at 468 (*quoting U.S. ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409, 415 (6th Cir.2002)). Courts do not look to the claimant's actual statements; rather, the analysis focuses on "the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Id.*, citing *Conner*, 543 F.3d at 1218.

A false-certification theory only applies where the underlying regulation is a "condition of payment," meaning that the government would not have paid the claim had it known the provider was not in compliance. *Id.*, citing *Chesbrough*, 655 F.3d at 468.

No matter which false certification theory Relator is attempting to pursue in this case, it is clear that her allegations are insufficient pursuant to Rule 9(b) and MCR 2.112(B)(1).  She has provided none of the who, what, when, where, and how of the alleged fraud required to comply with Rule 9(b) and MCR 2.112(B)(1).  She does not allege who expressly certified compliance with a Medicare or Medicaid condition of payment.  She cites no Medicare or Medicaid rule or regulation which she alleges to be a Medicare or Medicaid condition of payment by which Defendants expressly certified compliance.   She does not allege when Defendants falsely expressly certified compliance with a Medicare or Medicaid condition of payment.  She does not allege where Defendants falsely expressly certified compliance with a Medicare or Medicaid

condition of payment.   And she does not allege how Defendants falsely expressly certified compliance with a Medicare or Medicaid condition of payment.

Her allegations are insufficient under an implied certification theory as well.   Again, she has provided none of the who, what, when, where, and how of the alleged fraud required to comply with Rule 9(b) and MCR 2.112(B)(1).   She does not allege who impliedly certified compliance with a Medicare or Medicaid condition of payment.   She cites no Medicare or Medicaid rule or regulation which she alleges to be a condition of payment with a continuing duty to comply.   She does not allege when Defendants falsely impliedly certified compliance with a Medicare or Medicaid condition of payment.   She does not allege where Defendants falsely impliedly certified compliance with a Medicare or Medicaid condition of payment.   And she does not allege how Defendants falsely impliedly certified compliance with a Medicare or Medicaid condition of payment.

It is clear that Rule 9(b) and MCR 2.112(B)(1) are not met here for either version of the false certification theory of liability and that Relator's First Amended Complaint must be dismissed for such failure.

Relator's allegations of fraud on the government clearly do not satisfy the purpose of Rule 9(b) "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).   As noted by subsequent courts, there are also additional purposes of Rule 9(b)'s particularity requirements:   (1) discouraging "fishing expeditions and strike suits" and (2) protecting a defendant from "spurious charges of immoral and fraudulent behavior" and allowing a defendant to attack the narrow basis of an allegation of fraud.  *U.S. ex rel SNAPP, Inc. v. Ford Motor Co*., 532 F.3d 496, 504 (6th Cir. 2008).  *Bledsoe II* is particularly

instructive as to the specificity required to meet the purposes of Rule 9(b). Upon review of the relator's Second Amended Complaint in *Bledsoe II*, the following claims, far more detailed than the Relator's in the instant case, were dismissed:

1.  Allegations that emergency services were billed under a provider number of a physician who did not perform the services; such allegations included the name of the physician allegedly involved;

2.  Allegations that the defendant billed for glucometer finger sticks and heel sticks as venipunctures; such allegations included the dates, number of tests involved and initials of the patient involved;

3.  Allegations that the defendant improperly billed specific CPT codes; and

4.  Allegations that the defendants used DRG code 79 when DRG code 89 was appropriate.

*Bledsoe II*, 501 F.3d at 511-515. It is eminently clear that Relator's FAC does not satisfy Rule 9(b) and MCR 2.112(B)(1) and must be dismissed.

**II.  Count IX Fails To State A Claim Because Plaintiff's Purported Public Policy Claim Is Not Based Upon A Law That Conveys Rights On An Employee Or Is Preempted By A Specific Statutory Remedy.**

Plaintiff alleges at Paragraph 117 of her FAC that she was discharged "in whole or in part for refusing or failing to violate the public policy of the State of Michigan and that of federal law." The claim fails because plaintiff has failed to identify the violation of a law that was directed at conferring rights on employees.

The Michigan Supreme Court recognized this limitation on public policy retaliation claims in *Sucholdolski v. Michigan Consolidated Gas Company*, 412 Mich. 692, 695-696; 316 N.W.2d 710 (1982). The Michigan Supreme Court affirmed the granting of summary disposition

on a public policy retaliation claim.  The court acknowledged that in the absence of an explicit prohibition on retaliatory discharge, courts have "occasionally found sufficient legislative expression of policy to imply a cause of action."  However, the Court found that Mr. Suchodolski's claim failed because he had not alleged "the kind of violation of a clearly mandated public policy that would support an action for retaliatory discharge."  In particular, the court held that an alleged violation of regulations of the accounting systems of utilities "is not, as is the workers compensation statute, directed at conferring rights on the employees."

Further, if plaintiff can identify a statute that is directed at conferring rights on an employee, the statute controls and the common law will not create a public policy claim to supplement the statute.  The Michigan Supreme Court recognized this in *Dudewicz v Norris Schmid, Inc.*, 443 Mich. 68, 80; 503 N.W.2d 645 (1993), when it reversed the Court of Appeals and ordered summary disposition of a public policy claim brought by the former parts manager at an auto dealership who alleged that he had been terminated for refusing to drop his criminal charges against the dealership's service manager. The Court held:

> *** because the WPA [Whistleblower's Protection Act] provides relief to Dudewciz for reporting his fellow employee's illegal activity, his public policy claim is not sustainable.

*Suchodolski* and *Dudewicz* control here.  In paragraph 117, plaintiff fails to identify the law that she is relying upon to support her public policy claim.  Because she has not identified a statute that confers rights upon an employee, the claim fails under *Suchodolski.*  If she can identify a specific law and the law provides a remedy to employees, then under *Dudewicz,* her exclusive remedy is the statute.  Either way, her public policy claim in Count IX fails to state a claim.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss Count IX of Relator's First Amended Complaint with prejudice because it fails to state a claim upon which relief can be granted and dismiss Counts I, II, and IV of Relator's First Amended Complaint due to the failure to comply with Federal Rule of Civil Procedure 9(b) and Michigan Court Rule 2.112(B)(1).

Respectfully submitted,

s/Alan G. Gilchrist
Alan G. Gilchrist (P23408)
Timothy P. Burkhard (P73210)
The Health Law Partners, P.C.
Attorneys for Defendant
29566 Northwestern Highway, Suite 200
Southfield, MI 48334
248-996-8510
agilchrist@thehlp.com
tburkhard@thehlp.com

s/Craig H. Lubben
Craig H. Lubben (P33154)
MILLER JOHNSON
Attorneys for Defendants
100 W. Michigan Ave., Suite 200
Kalamazoo, MI 49007
269-226-2958
lubbenc@millerjohnson.com

Dated: March 14, 2014

4844-4854-8377, v. 2