# EXHIBIT A

*State ex rel Gurganus v. CVS Caremark Corp.*,
unpublished per curiam decision of the Court of Appeals,
January 22, 2013 (Docket Nos. 299997, 299998, 299999)

Case 1:13-cv-00294-RJJ   ECF No. 44-1,   PageID.287   Filed 03/14/14   Page 2 of 15

State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)

2013 WL 238552
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

STATE of Michigan ex rel. Marcia
**GURGANUS**, Plaintiff–Appellant,
v.
CVS CAREMARK CORPORATION, CVS Pharmacy,
Inc., Caremark, L.L.C., Caremark Michigan Specialty
Pharmacy, L.L.C., Caremark Michigan Specialty
Pharmacy Holding, L.L.C., CVS Michigan, L.L.C.,
Woodward Detroit CVS, L.L.C., Revco Discount
Drug Centers, Inc., Kmart Holding Corporation,
Sears Holding Corporation, Sears Holdings
Management Corporation, Sears Roebuck &
Company, Rite Aid Of Michigan, Inc., Perry Drug
Stores, Inc., Target Corporation, Kroger Company
Of Michigan, Kroger Company, Walgreen Company,
and Wal–Mart Stores, Inc., Defendants–Appellees.
City of Lansing and Dickinson
Press, Inc., Plaintiffs–Appellants,
v.
Rite Aid of Michigan, Inc. and Perry
Drug Stores, Inc., Defendants–Appellees.
City of Lansing, Dickinson Press, Inc.,
and Scott Murphy, Plaintiffs–Appellants,
v.
CVS Caremark Corporation, CVS Pharmacy, Inc.,
Caremark, L.L.C., Caremark Michigan Specialty
Pharmacy, L.L.C., Caremark Michigan Specialty
Pharmacy Holding, L.L.C., CVS Michigan L.L.C.,
Woodward Detroit CVS, L.L.C., Revco Discount
Drug Centers, Inc., Kmart Holding Corporation,
Sears Holdings Corporation, Sears Holdings
Management Corporation, Sears Roebuck &
Company, Target Corporation, Kroger Company of
Michigan, Kroger Company, Walgreen Company,
Wal–Mart Stores, Inc., Defendants–Appellees.

Docket Nos. 299997, 299998,
299999.   |   Jan. 22, 2013.

Kent Circuit Court; LC Nos. 09–003411–CZ, 09–007827–CZ, 10–00619–CZ.

Before: M.J. KELLY, P.J., and HOEKSTRA and STEPHENS, JJ.

**Opinion**

PER CURIAM.

*1 In these three consolidated cases, plaintiffs appeal as of right the trial court's orders granting summary disposition pursuant to MCR 2.116(C)(8) in favor of defendants. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The defendants in all three consolidated cases operate pharmacies in the state of Michigan. In each case, a qui tam action and two class action lawsuits, the respective defendants were alleged to have violated MCL 333.17755(2) (hereafter § 17755(2)), which is part of the Public Health Code (PHC), MCL 333.17701 *et seq.,* and states, in pertinent part, that "[i]f a pharmacist dispenses a generically equivalent drug product, the pharmacist shall pass on the savings in cost to the purchaser or to the third party payment source if the prescription purchase is covered by a third party pay contract."

Marcia **Gurganus**, (hereafter **Gurganus**), plaintiff in docket number 299997, brought a qui tam action on behalf of the state alleging that defendants failed to comply with § 17755(2) when they submitted prescription drug claims for drugs dispensed to Medicaid beneficiaries to the state and failed to pass on the savings in cost obtained by the pharmacies in dispensing a generically equivalent drug. She claimed that, by doing so, defendants violated the medicaid false claim act (MFCA), MCL 400.601 *et seq.,* which specifically authorizes a qui tam action. Following a hearing on defendants' motion for summary disposition pursuant to MCR 2.116(C)(8), the trial court granted summary disposition to defendants in the qui tam action because it concluded **Gurganus** failed to properly plead any violation of § 17755(2), and because it concluded that she was not a proper qui tam relator under the MFCA.

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.288   Filed 03/14/14   Page 3 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

Plaintiffs in Docket No. 299998, a class action lawsuit (the Rite Aid class action), are the City of Lansing and Dickinson Press, Inc. Plaintiffs in Docket No. 299999, also a class action lawsuit (the CVS class action), are the City of Lansing, Dickinson Press, Inc., and Scott Murphy. The class action lawsuits are generally identical; the main difference is the named defendants. In both class actions, the class sought to be certified was Michigan citizens "who were purchasers or third-party payment sources for generically equivalent prescription drug products dispensed by Defendants in the state of Michigan on or after July 24, 2003...." The class action plaintiffs alleged that defendants, contrary to § 17755(2), failed to pass on the savings in cost when they dispensed generic drugs. On the basis of this alleged conduct, the class action plaintiffs asserted four claims: (1) a violation of § 17755(2), (2) a violation of the Michigan consumer protection Act (MCPA), MCL 445.901 *et seq.*, (3) unjust enrichment, and (4) a violation of the health care false claim act (HCFCA), MCL 752.1001 *et seq.* [1] Following a hearing on defendants' motions for summary disposition pursuant to MCR 2.116(C)(8), the trial court granted summary disposition in favor of defendants in both class action lawsuits because it concluded that plaintiffs in each case failed to properly plead their claims, and because it concluded there is no private right of action pursuant to § 17755(2) or the HCFCA. **Gurganus** and the class action plaintiffs now appeal as of right the trial court's rulings in all three cases.

## II. ISSUES UNIQUE TO THE QUI TAM ACTION

*2 On appeal, **Gurganus** argues that the trial court erred by granting summary disposition pursuant to MCR 2.116(C)(8) in favor of defendants on the basis that she was not a proper qui tam relator under the MFCA. In particular, as argued by the parties on appeal, the question is whether **Gurganus** can meet the requirements of a proper qui tam relator under MCL 400.610a(13). [2]

We review de novo a trial court's decision on a motion for summary disposition. *Moser v. Detroit*, 284 Mich.App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8).

**Gurganus** filed the qui tam complaint based upon the authorization for such claims set forth in the MFCA, which provides: "Any person may bring a civil action in the name of this state under this section to recover losses that this state suffers from a violation of [the MFCA]." MCL 400.610a(1). However, the phrase "any person" is limited by MCL 400.610a(13), which provides:

> Unless the person is the original source of the information, a person, other than the attorney general, shall not initiate an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a state or federal legislative, investigative, or administrative report, hearing, audit, or investigation, or from the news media. The person is the original source if he or she had direct or independent knowledge of the information on which the allegations are based and voluntarily provided the information to the attorney general before filing an action based on that information under this section.

Whether **Gurganus** is qualified to bring a qui tam action despite the limitations on "any person" set forth in MCL 400.610a(13) requires us to engage in statutory interpretation. We review questions of statutory interpretation de novo. *Ward v. Mich. State Univ. (On Remand)*, 287 Mich.App 76, 79; 782 NW2d 514 (2010). The goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Tevis v. Amex Assurance Co.*, 283 Mich.App 76, 81; 770 NW2d 16 (2009). The first criterion in determining legislative intent is the language of the statute. *Id*. If the statutory language is unambiguous, then the Legislature's intent is clear and judicial construction is neither necessary nor permitted. *Odom v. Wayne Co.*, 482 Mich. 459, 467; 760 NW2d 217 (2008). "[W]e give undefined statutory terms their plain and ordinary meanings." *Koontz v. Ameritech Servs., Inc.*, 466 Mich. 304, 312; 645 NW2d 34 (2002). We may consult dictionaries in order to determine the plain and ordinary meaning of words not defined by a statute. *Sanchez v. Eagle Alloy, Inc.*, 254 Mich.App 651, 668; 658 NW2d 510 (2003). In defining an undefined term, we also consider "its placement and purpose in the statutory scheme." *Herman v. Berrien Co.*, 481 Mich. 352, 366; 750 NW2d 570 (2008).

Case 1:13-cv-00294-RJJ ECF No. 44-1, PageID.289 Filed 03/14/14 Page 4 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

*3 On appeal, the parties' arguments on this issue revolve around whether, within the meaning of MCL 400.610a(13), a *Wall Street Journal* article entitled *Why Generic Doesn't Always Mean Cheap,* corporate annual reports from CVS Caremark Corporation and Walgreens, and Securities Exchange Commission (SEC) filings by Rite Aid Corporation constitute public disclosure of the allegations and transactions contained in the qui tam complaint and whether **Gurganus** is an original source.

The MFCA jurisdictionally bars a qui tam action if the action is "based upon the public disclosure of allegations or transactions," unless the qui tam relator is the original source of the information that was publicly disclosed. MCL 400.610a(13). Thus, we first address whether there has been a "public disclosure." Pursuant to the statute, information is publicly disclosed if revealed "in a criminal, civil, or administrative hearing in a state or federal legislative, investigative, or administrative report, hearing, audit, or investigation, of from the news media." MCL 400.610a(13)[3]

The parties do not dispute that the *Wall Street Journal* article is part of the news media and is therefore public within the meaning of MCL 400.610a(13). Regarding the SEC filings and corporate reports, defendants argue that the SEC filings and the annual corporate reports constitute administrative reports, and are accordingly also public within the meaning of the statute. **Gurganus** maintains that the corporate reports do not constitute public disclosures, and does not address the status of the SEC filings.

The *Wall Street Journal* article contains the following relevant information:

> CVS, Rite Aid and Walgreen Co. all say that about two-thirds of their revenues come from prescription drugs.
>
> * * *
>
> Mr. DeAngelis [a spokesman for CVS] wouldn't say how much CVS pays for generics but confirmed profit margins on generics are generally bigger than for branded drugs....
>
> Walgreen spokeswoman Tiffani Bruce says there can be a lag in retail price reductions if the company had stocked up on large quantities of a generic before the manufacturers' prices dropped. She also says profit margins on generics help the pharmacy chain make up for smaller profits— or even losses—on branded drugs. The beginning of a generic's availability "represents a small window where drugstores are able to recover from the weight of carrying all these unprofitable prescriptions," Ms. Bruce says.

The 2008 annual report filed by Walgreens states that "retail pharmacy margins increased as a result of growth in generic drug sales," and that generic drug sales "positively influenced" retail pharmacy profit margins. The 2007 annual report filed by CVS indicates that "generics are more profitable than brand name drugs and help drive margin expansion," and that "gross profit and gross profit margins generally increase with the corresponding increase in generic dispensing rates since generic drug revenues normally yield a higher gross profit rate than equivalent brand name drug revenues." The 2008 report similarly indicates that generic drugs are more profitable than brand name drugs. The 10–K form filed with the SEC by Rite Aid Corporation in 2008 indicates that the "gross profit from a generic prescription in the retail drug store industry is greater than the gross profit from a brand drug prescription." Rite Aid's 2009 filing similarly indicates that generic drugs generate higher gross profit margins.

*4 Because it is not disputed that the *Wall Street Journal* article is a public disclosure, and the annual corporate reports and the SEC filings convey basically the same information as the *Wall Street Journal* article, whether the SEC filings and annual corporate reports constitute administrative reports within the meaning of MCL 400.610a(13) will have no impact on whether the qui tam complaint is based upon the public disclosure of allegations or transactions. Consequently, we find it unnecessary to address whether the SEC filings and annual corporate reports constitute administrative reports within the meaning of MCL 400.610a(13).

Under these circumstances, resolution of this issue requires that we address whether the *Wall Street Journal* article publicly disclosed "allegations or transactions" within the context of MCL 400.610a(13) on which the qui tam complaint is based. The statute does not define "allegations or transactions." *Random House Webster's College Dictionary* defines "allegation" as "the act of alleging; an affirmation or assertion." "Alleging" is defined as "to declare with positiveness; affirm; assert." *Random House Webster's College Dictionary* (1992). "Transactions" is defined as "the act or process of transacting; the fact of being transacted," and "transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement," and as "to

Case 1:13-cv-00294-RJJ  ECF No. 44-1, PageID.290  Filed 03/14/14  Page 5 of 15

State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)

carry out, accomplish." *Random House Webster's College Dictionary* (1992).

Before determining whether the public disclosure contained "allegations or transactions" we must examine what the allegations in the qui tam complaint are based upon. The qui tam complaint alleges a violation of MCL 400.607 of the MFCA, which bars the presentation for payment of a false claim for Medicaid benefits. In MCL 400.610a(1), the MFCA authorizes qui tam civil actions to recover losses sustained by the state from violation of the act. Pursuant to this provision, the qui tam complaint alleges that the state suffered losses in violation of the MFCA when defendants submitted Medicaid claims for the sale of generic drugs that failed to pass on the savings in cost as required by § 17755(2), and that those losses constituted false claims under the MFCA. Thus, the qui tam complaint is based upon the allegations of false Medicaid claims and the discussion of alleged transactions whereby false claims for Medicaid benefits were presented for payment because if these allegations are proven to be true, they would plainly establish violations of the MFCA.

The public disclosures of "allegations or transactions" that defendants submit the qui tam complaint is based upon are general statements regarding the profitability of generic drug sales and statements that suggest generic drugs are more profitable than branded drugs. Standing alone, these statements do not constitute declarations of unlawful conduct on the part of defendants, i.e. it is not unlawful to make a profit on the sale of drugs. However, when the article is viewed through the lens of § 17755(2), one could conclude that the companies engaged in making larger profits on generic drugs are violating § 17755(2). Nevertheless, this fact does not mean that the public information itself contains an "allegation" of unlawful conduct under MCL 400.610a(13) because being able to deduce unlawful conduct from the public disclosures based on additional information or knowledge does not mean that the public disclosures themselves contain an "affirmation or assertion" as required by the plain language of the statute.

**\*5** Similarly, being able to conclude that a violation of § 17755(2) may be occurring does not constitute a public disclosure of any transaction on which the qui tam complaint is based. The *Wall Street Journal* article itself does not link the claimed greater profits on generic drugs to the submission of false claims for Medicaid benefits. Further, the article does not even suggest any wrongdoing on the part of defendants. Rather, the article merely discusses the fact that large corporations, such as defendants, find ways to maximize profits. It does not even suggest that the larger profits that representatives of Walgreens and CVS claimed were made on generic drugs were realized as the result of unethical or unlawful conduct. Accordingly, we hold that the public disclosures upon which defendants rely do not rise to the level of disclosing any transaction on which the qui tam complaint was based.

Because we conclude that the qui tam complaint is not "based upon the public disclosure of allegations or transactions," we need not consider whether **Gurganus** is the original source of the information that was publicly disclosed.

### III. ISSUES UNIQUE TO THE CLASS ACTION LAWSUITS

The class action plaintiffs in both class action lawsuits maintain that the trial court erred by concluding that they do not have a private cause of action pursuant to § 17755(2), or the HCFCA, specifically MCL 752.1009.

We review a trial court's decision on a motion for summary disposition de novo. *Moser,* 284 Mich.App at 538. We also review questions of statutory interpretation de novo. *Ward,* 287 Mich.App at 79. The goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Tevis,* 283 Mich.App at 81. The first criterion in determining legislative intent is the language of the statute. *Id.* If the language is unambiguous, the Legislature's intent is clear, and judicial construction is neither necessary nor permitted. *Odom,* 482 Mich. at 467.

**Private Cause of Action Pursuant to § 17755(2)**
The class action plaintiffs first assert that the trial court erred by finding that § 17755(2) does not create a private cause of action. In particular, the class action plaintiffs maintain that § 17755(2)'s creation of beneficial right without a civil remedy to enforce that right is sufficient to demonstrate that the Legislature intended to create a private cause of action.

To determine whether the Legislature intended to create a private cause of action, the specific language used by the Legislature must be analyzed. The best indicator of legislative intent is the plain language of the statute. *Chrisdiana v. Dep't. of Community Health,* 278 Mich.App 685, 692; 754 NW2d 533 (2008). A statute's context and placement within

Case 1:13-cv-00294-RJJ   ECF No. 44-1,   PageID.291   Filed 03/14/14   Page 6 of 15

State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)

a statutory scheme should also be considered in determining legislative intent. *Id.* Unless defined in the statute, a term must be accorded its plain and ordinary meaning. *Brackett v. Focus Hope, Inc.,* 482 Mich. 269, 276; 753 NW2d 207 (2008). Every word should be given meaning and effect. *United States Fidelity & Guaranty Co. v. Michigan Catastrophic Claims Ass'n. (On Rehearing),* 484 Mich. 1, 13; 795 NW2d 101 (2009); *Hoste v. Shanty Creek Mgt., Inc.,* 459 Mich. 561, 574; 592 NW2d 360 (1999), and no part of a statute should be rendered surplusage or nugatory, *Robinson v. Lansing,* 486 Mich. 1, 21; 782 NW2d 171 (2010). "The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another." *Robinson v. Detroit,* 462 Mich. 439, 459; 613 NW2d 307 (2000).

**\*6** In *South Haven v. Van Buren Co. Bd. of Comm'rs.,* 478 Mich. 518; 734 NW2d 533 (2007), our Supreme Court, after recognizing that the defendant violated MCL 224.20b, addressed whether the plaintiff was entitled to pursue a private cause of action against the defendant for the defendant's violation.[4] In its discussion of this issue, the Court announced governing legal principles for resolving such disputes. The Court held that:

> It is well settled that when a statute provides a remedy, a court should enforce the legislative remedy rather than one the court prefers. To determine whether a plaintiff may bring a cause of action for a specific remedy, this Court must determine whether the Legislature intended to create such a cause of action. Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only. [*Id.* at 528–529 (quotations and alterations omitted).]

In this case, § 17755(2) provides that "[i]f a pharmacist dispenses a generically equivalent drug, the pharmacist shall pass on the savings in cost to the purchaser or to the third party payment source if the prescription purchase is covered by a third party pay contract." MCL 333.17755(2). The term "shall" denotes mandatory action. *Isidore Steiner, DPM, PC v. Bonanni,* 292 Mich.App 265, 271–272; 807 NW2d 902 (2011). Thus, if a pharmacist dispenses a generic drug and does not pass the savings in cost to the purchaser or the third party payment source, the pharmacist has violated the statute. Therefore, by its plain language, § 17755(2) creates a beneficial right in favor of a purchaser or payee of generic drugs. While the PHC does not expressly provide purchasers or third party payment sources a remedy for a pharmacist's violation of § 17755(2), it does provide administrative remedies for violation of § 17755(2). Consequently, the issue is whether the remedy for a violation of the beneficial right created § 17755(2) is limited to the administrative remedies provided by the PHC.

The Legislature enacted the PHC to protect the health, safety, and welfare of the public, by regulating the persons, facilities, and agencies that affect them. *Woodard v. Custer,* 476 Mich. 545, 611; 719 NW2d 842 (2006). Section 17755(2) specifically applies to the conduct of a "pharmacist." MCL 333.17755(2) ("the pharmacist shall pass on the savings in cost to the purchaser or to the third party payment source if the prescription purchase is covered by a third party pay contract"). Part 161 of the PHC specifically governs the conduct of health professions,[5] which includes pharmacists. MCL 333.16111.[6] The PHC empowers the Department of Licensing and Regulatory Affairs (LARA) to investigate activities related to the practice of a health profession. MCL 333.16104(2). LARA must open an investigation into the practice of a health profession as a result of a complaint by a person or a governmental entity if it determines the complaint demonstrates "there is a reasonable basis to believe" the PHC has been violated. See MCL 333.16231(1)-(2). LARA is directed by the statute to report its findings to a disciplinary subcommittee.[7] MCL 333.16221. If the disciplinary subcommittee finds a violation of the PHC, it may impose sanctions.[8] MCL 333.16221; MCL 333.16226. Moreover, violation of Article 15 of the PHC, the article that includes § 17755(2), is also a misdemeanor. MCL 333.16299(1).

**\*7** Accordingly, by setting forth a framework for investigation of pharmacists and the imposition of sanctions for violation of the PHC, the PHC itself provides a remedy for violation of § 17755(2). Any person, including generic drug purchasers or third party payment sources, may file a complaint with LARA. If after investigation the LARA disciplinary subcommittee finds a violation of the PHC, it "shall impose" sanctions. MCL 333.16226. Thus, the PHC provides a remedy for violation of § 17755(2), and the statutory remedy for violation of § 17755(2) is the exclusive remedy. *South Haven,* 478 Mich. at 529; *Pompey v. Gen. Motors Corp.,* 385 Mich. 537, 552; 189 NW2d 243 (1971). The fact that the Legislature provided specific remedies for the violation of § 17755(2), but did not include a private cause of action in its provision of remedies is evidence of the Legislature's intent not to allow purchasers or third party

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.292   Filed 03/14/14   Page 7 of 15

State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)

payment sources of generic drugs a pursue a private cause of action against pharmacists. *South Haven,* 478 Mich. at 529. Because there is no evidence that the Legislature intended to create a private cause of action to enforce a pharmacist's duty to pass on the savings in cost to the purchaser or third party payment source when a generic drug is dispensed, it would be an exercise of will, rather than judgment, for us to conclude that the class action plaintiffs have a private cause of action to enforce defendants' duties under MCL 333.17755(2). *Id.* at 531.

Further, we find unavailing plaintiffs' argument that we should conclude that they are entitled to maintain a private cause of action because the remedies provided by the PHC for a pharmacist's violation of MCL 333.17755(2) are inadequate. We do not find plaintiffs' argument persuasive because "the adequacy of a specified remedy is a judgment for the Legislature, not for this Court." *South Haven,* 478 Mich. at 530–531 n 17. The class action plaintiffs rely on a footnote from *Pompey,* 385 Mich. at 553 n 14, to support their assertion that the adequacy of a prescribed remedy may be considered when determining whether the statutorily prescribed remedy is the exclusive remedy. However, this exception to the general rule was recently criticized by the Court in *Lash v. Traverse City,* 479 Mich. 180, 192 n 19; 735 NW2d 628 (2007), which stated: "We need not address the dictum in the *Pompey* footnote that some quantum of additional remedy is permitted where a statutory remedy is 'plainly inadequate.' We do note that this principle, which has never since been cited in any majority opinion of the Court, appears inconsistent with subsequent case law." Moreover, the Michigan Supreme Court has explicitly recognized that not every perceived wrong has a specific remedy. *Grand Traverse Co. v. Mich.,* 450 Mich. 457, 469; 538 NW2d 1 (1995) ("[n]ot every perceived wrong necessarily has a judicial remedy—this is one of those situations, revealed through the plain language of the statute"). Thus, the adequacy of the statutorily prescribed remedy is not relevant to the determination of the Legislature's intent to allow for a private cause of action.

*8 Accordingly, we conclude that § 17755(2) does not provide the class action plaintiffs with a private cause of action to enforce defendants' duties pursuant to the statute, and we affirm the trial court's orders granting summary disposition to defendants in regard to the § 17755(2) claims in both class action lawsuits.

**Private Cause of Action Pursuant to the HCFCA**

In regard to the HCFCA, the class action plaintiffs argue that the trial court erred by holding that the HCFCA, and specifically MCL 752.1009, does not provide a private cause of action to health care corporations and health care insurers. Specifically, the class action plaintiffs argue that just like the Legislature created a cause of action for the State (and qui tam relators) in the MFCA, it created a private cause of action for health care corporations and health care insurers by enacting MCL 752.1009.

To determine whether the Legislature intended to create a private cause of action under the HCFCA, the specific language used by the Legislature must be analyzed. The best indicator of legislative intent is the plain language of the statute. *Chrisdiana,* 278 Mich.App at 692. Moreover, we may not impose a remedy for a statutory violation absent evidence the Legislature intended the remedy. *South Haven,* 478 Mich. at 528–529. Accordingly, we must determine whether there is evidence within the HCFCA that the Legislature intended a private cause of action. *Id.*

The Legislature's purpose in enacting the HCFCA was to extend to private health care corporations and insurers the same protections against fraud that it afforded the Department of Social Services (now the Family Independence Agency) in the MFCA. *People v. Motor City Hosp. & Surgical Supply, Inc.,* 227 Mich.App 209, 213; 575 NW2d 95 (1997). The class action plaintiffs specifically rely on MCL 752.1009, which provides:

> A person who receives a health care benefit or payment from a health care corporation or health care insurer which the person knows that he or she is not entitled to receive or be paid; or a person who knowingly presents or causes to be presented a claim which contains a false statement, shall be liable to the health care corporation or health care insurer for the full amount of the benefit or payment made.[9]

As noted previously, the term "shall" denotes mandatory action. *Isidore Steiner, DPM, PC,* 292 Mich.App at 271–272. The term "liable" means "legally responsible." *Bailey v. Oakwood Hosp. & Med. Ctr.,* 472 Mich. 685, 696; 698 NW2d 374 (2005). Application of the plain meaning of these words reveals the Legislature's intent that MCL 752.1009 make one who presented a claim that he or she knew they

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.293   Filed 03/14/14   Page 8 of 15

State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)

were not entitled to receive, or who presented a claim that contained a false statement, legally responsible to health care corporations or health care insurers for the full amount of the overpayment of the benefit or payment. Because of the broad and mandatory statement of civil liability in MCL 752.1009, we reject defendants' argument that this is a penal statute, and a health care insurer's only recourse is to recover restitution after a criminal conviction under MCL 752.1010. The plain language of MCL 752.1009 provides that a person who violates the statute "*shall be liable* " to the health care insurer "for the full amount of the benefit or payment made." MCL 752.1009. Therefore, we conclude that the HCFCA, pursuant to MCL 752.1009, creates a private cause of action for health care corporations and health care insurers, and we reverse the trial court's holding to the contrary.

### IV. SUMMARY DISPOSITION UNDER MCR 2.116(C)(8)

**\*9 Gurganus** and the class action plaintiffs both argue that the trial court erroneously granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) because, contrary to the assertions made by defendants in their motion, the second-amended complaints properly stated claims on which relief could be granted. [10]

The trial court dismissed all three second-amended complaints pursuant to MCR 2.116(C)(8) in three lengthy opinions. Relying on basically the same reasoning for dismissing all three second-amended complaints, it agreed with defendants that plaintiffs failed to state a claim upon which relief could be granted because the complaints failed to identify specific transactions where defendants violated § 17755(2). The trial court also agreed with defendants that the complaints relied on inferences upon inferences to demonstrate violation of § 17755(2), and that plaintiffs' allegations regarding the calculation of defendants' acquisition costs were insufficient.

We review a trial court's decision on a motion for summary disposition de novo. *Moser,* 284 Mich.App at 538. A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone. *Feyz v. Mercy Mem. Hosp.,* 475 Mich. 663, 672; 719 NW2d 1 (2006). It may not be supported with documentary evidence. MCR 2.116(G)(2), (5); *Patterson v. Kleiman,* 447 Mich. 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts, and are construed in the light most favorable to the nonmoving party. *Cummins v. Robinson Twp.,* 283 Mich.App 677, 689; 770 NW2d 421 (2009); *Detroit Int'l. Bridge Co. v. Commodities Export Co.,* 279 Mich.App 662, 670; 760 NW2d 565 (2008). Conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action. *Churella v. Pioneer State Mut. Ins. Co.,* 258 Mich.App 260, 272; 671 NW2d 125 (2003). The motion should be granted when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Feyz,* 475 Mich. at 672; *Dalley v. Dykema Gossett PLLC,* 287 Mich.App 296, 305; 788 NW2d 679 (2010). Said differently, a court should grant a motion brought pursuant to MCR 2.116(C)(8) "only if it is satisfied that the claim cannot succeed because of some deficiency that cannot be overcome at trial." *Miller v. Irwin,* 190 Mich.App 610, 614; 476 NW2d 632 (1991).

Because MCR 2.116(C)(8) tests the legal sufficiency of the complaint alone, *Feyz,* 475 Mich. at 672, we examine the pleading requirements applied to complaints. MCR 2.111(B)(1), which sets forth the general pleading requirements applicable to most complaints, provides that a complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" However, if allegations of fraud are made, they are subject to a heightened pleading standard. MCR 2.112(B)(1) provides that "[i]n allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity."

**\*10** "The primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley,* 287 Mich.App at 305 (quotation and alternation omitted). In addition, in determining the sufficiency of a complaint, consideration must be given to whether the records and knowledge of the facts on which the plaintiff relies are largely, if not exclusively, within the possession of the defendant. *Spelman v. Addison,* 300 Mich. 690, 702–703; 2 NW2d 883 (1942). When fraud is alleged, it must be pleaded with particularity, *Cooper v. Auto Club Ins. Ass'n.,* 481 Mich. 399, 414; 751 NW2d 443 (2008), and this particularity requirement is satisfied when a plaintiff pleads the circumstances of the fraud "with sufficient particularity to apprise the opposite party of the nature of the case he must prepare to defend." *Kassab v. Mich. Basic Prop. Ins. Assoc.,*

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.294   Filed 03/14/14   Page 9 of 15

State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)

185 Mich.App 206, 213; 460 NW2d 300 (1990), aff'd in part and rev'd in part on other grounds 441 Mich. 433 (1992), quoting 1 Martin, Dean & Webster, Michigan Court Rules Practice (3rd ed), Rule 2.112, p 242.

**Heightened Pleading Standard**
Initially, the parties dispute whether the general pleading standard set forth in MCR 2.111(B)(1) or the heightened pleading standard set forth in MCR 2.112(B)(1) should be applied to the second-amended complaints. [11]

Michigan case law has not addressed whether the heightened pleading standard of MCR 2.112(B)(1) applies to the HCFCA or the MFCA, but federal courts have considered the applicability of the federal pleading rule for fraud cases to a similar statute. Under these circumstances, we find it appropriate to consider the federal cases for guidance. See *Zine v. Chrysler Corp.,* 236 Mich.App 261, 287 n 12; 600 NW2d 384 (1999) (stating that because there was little Michigan case law construing MCR 3.501, it was appropriate to consider federal cases construing a similar federal rule).

FRCP 9(b) is substantially similar to MCR 2.112(B)(1). It states, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Federal circuit courts have held that FRCP 9(b) applies to claims under the federal False Claims Act (FCA). See, e.g., *Sanderson v. HCA–The Healthcare Co.,* 447 F3d 873, 876–877 (CA 6, 2006); *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F3d 1301, 1308–1309 (CA 11, 2002). The FCA generally prohibits the submission of false or fraudulent claims for government payment, *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1496 (CA 11, 1991), and is accordingly analogous to the MFCA and the HCFCA. The federal courts have applied FRCP 9(b) to claims under the FCA simply because the FCA is an anti-fraud statute. See, e.g., *Clausen,* 290 F3d at 1309; *Bly–Magee v. California,* 236 F3d 1014, 1018 (CA 9, 2001); *Gold v. Morrison–Knudsen Co.,* 68 F3d 1475, 1476–1477 (CA 2, 1995). For the conclusion that the FCA is an anti-fraud statute, the courts have cited to 31 USC 3729(a), which uses language such as "false or fraudulent," "conspires to defraud," and "intending to defraud," and to case law that states the purpose of the FCA is to protect the funds and property of the federal government from fraudulent claims. *Clausen,* 290 F3d at 1309; *Bly–Magee,* 236 F3d at 1018; *Gold,* 68 F3d at 1476.

*11 We find the federal law on this issue persuasive, and conclude that MCR 2.112(B)(1) applies to claims under the MFCA and the HCFCA. The MFCA was enacted to "fill a void in the law concerning fraudulent activity in connection with Medicaid." *Motor City Hosp. & Surgical Supply, Inc.,* 227 Mich.App at 213. As seen from its provisions and definitions of terms, the MFCA prohibits a person from defrauding the Medicaid program. See, e.g., MCL 400.603; MCL 400.605; MCL 400.606; MCL 400.607. Similarly, the HCFCA is an anti-fraud statute. See *Motor City Hosp. & Surgical Supply, Inc.,* 227 Mich.App at 213. The HCFCA prohibits a person from defrauding health care corporations and health care insurers. See MCL 752.1002; MCL 752.1003; MCL 752.1005; MCL 752.1009. Because both the MFCA and the HCFCA are anti-fraud statutes, we conclude that the MFCA claim in the qui tam complaint and the HCFCA claim in the class action complaints must satisfy the heightened pleading standard of MCR 2.112(B)(1).

**Sufficiency of the Complaints**
Having concluded that the heightened pleading standard applicable to fraud claims is applicable in this case, we now address whether the second-amended complaints satisfy the heightened pleading requirement set forth by MCR 2.112(B)(1) in order to survive summary disposition under MCR 2.116(C)(8). Here, the class action complaints allege that defendants violated the HCFCA, and the qui tam complaint alleges that defendants violated the MFCA. [12] Because a violation of § 17755(2) is essential to proving both the HCFCA claim brought by the class action plaintiffs and the MFCA claim brought by **Gurganus** in the qui tam action, the issue before us is whether the second-amended complaints adequately plead violations of § 17755(2) by defendants. [13]

Defendants argued in the trial court and again argue on appeal that the manner in which plaintiffs [14] pled their case entitles them to summary disposition pursuant to MCR 2.116(C)(8) because both the second-amended class action complaints and the second-amended qui tam complaint (hereafter referred to collectively as "the complaints") fail to state a claim upon which relief can be granted due to plaintiffs' failure to plead specific, actual transactions. Specifically, defendants argue that the transactions identified by plaintiffs in the complaints are not sufficient to satisfy the applicable pleading standard because the acquisition costs alleged are not specific to defendants, and are instead derived from the known acquisition costs of Kroger in West Virginia. Accordingly, defendants essentially argue that it is unreasonable to assume,

Case 1:13-cv-00294-RJJ  ECF No. 44-1, PageID.295  Filed 03/14/14  Page 10 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

as plaintiffs allege, that any difference between Kroger's acquisition costs and the rest of defendants' acquisition costs is immaterial. We disagree.

In their complaints, plaintiffs allege that each defendant repeatedly violated the HCFCA and the MFCA by overcharging purchasers [15] for generic drugs. Plaintiffs specifically allege that defendants overcharged purchasers by failing to pass on the savings in cost as required by § 17755(2), which requires pharmacies to pass on to the purchaser or third-party payment source the savings in cost realized when generic drugs are dispensed. Further, plaintiffs maintain that failing to pass on the savings cost constitutes a false statement or claim within the meaning of both statutes.

**\*12** Additionally, the complaints allege that a simple mathematical formula can be employed to establish the maximum permissible price for a generic drug under § 17755(2). The formula provides that whether the profit for the sale of a generic drug violates § 17755(2) can be calculated by subtracting the acquisition cost of the generic drug from the sale price of the generic drug and comparing that amount to see if it is greater than, lesser than or equal to the profit for a brand name drug, which is also calculated by subtracting the acquisition cost of the brand name drug from the sale price of the brand name drug. The complaints express this calculation method using the following formula: generic price—generic acquisition cost # brand price—brand acquisition cost. Using this formula to demonstrate the maximum price that can be charged for a generic drug without violating § 17755(2), the complaints allege that defendants charged prices for generic drugs in excess of the maximum legal price, and accordingly, must have been violating § 17755(2)'s mandate, and thereby, committing fraud.

Next, the complaints allege that plaintiffs engaged in numerous [16] prescription drug transactions over the course of the statute of limitations period with defendants. Instead of identifying each transaction that violated § 17755(2), plaintiffs allege specific information pertaining to a number of specific brand name drugs and their generic equivalents. [17] For these identified drugs, the complaints name pharmacies allegedly involved in dispensing these drugs and state the date, the brand sales price, the brand acquisition cost, the brand profit, the generic acquisition cost, the maximum generic price, the actual generic sales price, and the overcharge amount in violation of § 17755(2) for each of the identified drugs used as examples. The complaints contain these specific allegations for hundreds of different dates in 2008. Relying on their formula to calculate the profits made from the sales of brand name and generic drugs, plaintiffs' complaints then compare the profits in order to demonstrate violation of § 17755(2).

The critical number in plaintiffs' formula is the acquisition cost of the generic and brand name drugs. This is true because the sale prices of generic and brand name drugs are publicly known and easily identifiable; however, the acquisition cost is proprietary to each defendant. For this number, plaintiffs rely on inside information regarding Kroger's acquisition costs for brand name and generic drugs to determine defendants' acquisition costs for purposes of calculating defendants' profits and demonstrating violation of § 17755(2). [18] Specifically, the complaints allege that plaintiffs are in possession of Kroger's 2008 acquisition costs for the identified brand name prescription drugs and for the identified generic bioequivalent of the brand name prescription drugs used as examples in the complaints.

Further, to make the connection to the non-Kroger defendants, the complaints allege that because Kroger operates retail pharmacies nationwide, acquires prescription drugs through central purchasing functions serving all its pharmacy locations, and acquires the majority of its prescription drugs from wholesalers, the acquisition costs of all the other defendants are not materially different. Specifically, the complaints assert that like Kroger, all the other defendants operate retail pharmacies nationwide, acquire prescription drugs through central purchasing functions serving all their pharmacy locations, and acquire the majority of their prescription drugs from wholesalers. Because of these alleged similarities, the complaints maintain that the purchasing power of all national pharmacies is materially the same. Because Kroger and the other defendants operate in materially the same manner, plaintiffs' complaint maintains that the acquisition costs of defendants do not materially vary from Kroger's known acquisition costs which are stated in the complaint.

**\*13** Using this pricing information, (sale price and acquisition cost to defendants based on the known acquisition costs of Kroger), and plugging it into their formula (generic price—generic acquisition cost # brand price—brand acquisition cost) the complaints allege that defendants are violating § 17755(2). Specifically, the complaints allege that plaintiffs purchased generic drugs from defendants, and that defendants failed to pass on the savings in cost as required by § 17755(2). Indeed, plaintiffs' calculations as set forth in

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.296   Filed 03/14/14   Page 11 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

the complaints show that defendants consistently realized a substantial increase in profit from the sale of generic drugs as compared to brand name drugs. Further, plaintiffs allege that defendants, by failing to pass on the savings in cost, knowingly presented or caused to be presented claims that contained one or more false statement in violation of the HCFCA and similarly, that defendants made or presented or caused to be made or presented to an employee or officer of the State a claim that they knew was false under the social welfare act in violation of the MFCA.

Initially, we note that defendants' argument that Kroger's acquisition costs should not be accepted as a reasonable representation of the rest of defendants' acquisition costs fails to recognize that when evaluating a motion for summary disposition under MCR 2.116(C)(8), all well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts, and are construed in the light most favorable to the nonmoving party. *Cummins,* 283 Mich.App at 689. Under this standard, we conclude that plaintiffs' claim that defendants' 2008 acquisition costs for brand name and generic drugs do not vary materially from those of Kroger is not a conclusory statement unsupported by factual allegations, such that it would be insufficient to state a cause of action. *Churella,* 258 Mich.App at 272. Plaintiffs' allegations are factual allegations, and when they, as well as the reasonable inferences from them, are viewed in the light most favorable to plaintiffs, *Cummins,* 283 Mich.App at 689; *Detroit Int'l. Bridge Co.,* 279 Mich.App at 670, the allegations support the conclusion that defendants' 2008 acquisition costs for brand name and generic drugs do not vary materially from those of Kroger. Defendants may disagree with some of the factual allegations, but whether the allegations are accurate is a factual question that is not to be answered in deciding a motion under MCR 2.116(C)(8).

Moreover, the fact that plaintiffs' complaints do not allege transactions based on information specific to defendants, and the fact that the complaints rely on some inferences, is not fatal to plaintiffs' complaints. Plaintiffs are not required to prove their case in their pleadings, and summary disposition is appropriate only if the claim cannot succeed because of some deficiency that cannot be overcome at trial. *Miller,* 190 Mich.App at 614. The kind of specific information defendants claim plaintiffs are required to include in their complaints is information typically obtained during discovery. Contrary to defendants' assertions, in order to avoid summary disposition pursuant to MCR 2.116(C)(8), plaintiffs' responsibility is to plead, with particularity, the circumstances constituting the alleged fraud. Here, the circumstances constituting fraud in all three complaints are the instances when defendants allegedly sold generic prescription drugs without passing on the savings in cost in violation of § 17755(2). The complaints state these circumstances with sufficient particularity because they identify the date, brand sales price, brand acquisition cost, brand profit, generic acquisition cost, maximum generic price, actual generic sales price, and overcharge amount for each of the drugs used as examples regarding each defendant. The complaints contain these specific allegations for hundreds of different dates in 2008. Cumulatively, these allegations sufficiently apprise defendants of what plaintiffs will attempt to prove, and leave no doubt concerning what defendants will be required to defend against. *Kassab,* 185 Mich.App at 213. Further, plaintiffs allegations, if true, demonstrate that defendants violated § 17755(2). Therefore, we conclude that summary disposition pursuant to MCR 2.116(C)(8) is not appropriate because further factual development could show that plaintiffs are entitled to recovery. *Feyz,* 475 Mich. at 672. Further, we conclude that the pleadings meet the heightened pleading standards for allegations of fraud because the complaints particularly state the circumstances constituting the alleged fraud, and there can be no doubt that the complaints sufficiently apprise defendants of the nature of the case that they must prepare to defend.

**Defendants' Additional Arguments**

*14 Defendants raise several other specific arguments to support their claim that the complaints failed to state claims on which relief can be granted.

First, defendants maintain that plaintiffs' complaints failed to plead violation of the HCFCA or the MFCA because the alleged violation of § 17755(2) is not a "false claim" within the meaning of the HCFCA or the MFCA, and proof of a "false claim" is a necessary element of a violation of both statutes.[19] Specifically, defendants argue that plaintiffs fail to plead any false claim because plaintiffs only allege violation of § 17755(2), and do not allege that any defendant ever submitted a claim for a drug other than what was actually dispensed, misstated the amount actually charged, or any other affirmative misrepresentation. In support of their claim that violation of § 17755(2) does not constitute a false claim within the meaning of the HCFCA or the MFCA defendants do not address the language of either statute. Rather, defendants argue that no Michigan court has ever

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.297   Filed 03/14/14   Page 12 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

held that alleged violations of a law, rule, or regulation, standing alone, are sufficient to constitute a "false claim" under either statute. Therefore, defendants maintain, violation of § 17755(2) must not be sufficient to demonstrate a "false claim" within the meaning of either the HCFCA or the MFCA. [20] We disagree.

Whether violation of § 17755(2) specifically satisfies the false claim requirement set forth in the HCFCA and the MFCA is an issue that requires analysis of the relevant statutory language. Again, we note that the goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Tevis,* 283 Mich.App at 81. The Legislature's intent is clear when the statutory language is unambiguous, and judicial construction is neither necessary nor permitted. *Odom,* 482 Mich. at 467.

Both the HCFCA and the MFCA require proof of a false claim. [21] Further, both statutes define "false" as "wholly or partially untrue or deceptive," MCL 752.1002(c); MCL 400.602(d), and both statutes define "deceptive" in part as the failure to reveal a material fact leading to the belief that the state of affair is something other than it actually is. [22] Applying these clear and unambiguous definitions to the averments made in this case leads us to conclude that plaintiffs' complaints allege false claims.

Material to a pharmacist's entitlement to payment for generic drugs that are dispensed is that the amount charged complies with § 17755(2). Here, defendants' presentation of claims for payment impliedly represents to purchasers and payees that defendants are passing on the savings in cost, if any, when generic drugs are dispensed. However, if plaintiffs' allegations are true, defendants are not actually passing on the savings in cost by concealing material facts regarding the profits that they are realizing from the sale. We conclude that this alleged mechanism for violating § 17755(2) meets the definition of "deceptive" under the plain language of both statutes. More specifically, because the alleged violation of § 17755(2) entails omission of a material fact leading purchasers and payees to believe the state of affair is something other than it actually is, defendants are engaging in deceptive, and therefore false, conduct. Moreover, we reject defendants' argument that an affirmative act or misrepresentation is required to constitute a false claim because neither the HCFCA's nor the MFCA's definition of false claim requires an affirmative act. We do not read requirements into plain statutory language. *Roberts v. Mecosta Co. Gen. Hosp.,* 466 Mich. 57, 63; 642 NW2d 663 (2002).

**\*15** Next, defendants argue the complaints needed to plead facts demonstrating that a substitution transaction occurred. According to defendants, a substitution transaction occurs within the meaning of the statute when a pharmacist dispenses a generic drug when a brand name drug was prescribed. Thus, defendants argue that § 17755(2) applies only when a brand name drug is prescribed and a pharmacist dispenses a generic drug.

This Court will not read words into the plain language of a statute. *PIC Maintenance, Inc. v. Dep't. of Treasury,* 293 Mich.App 403, 411; 809 NW2d 669 (2011). There is no express language in MCL 333.17755(2) that limits a pharmacist's obligation to pass on the savings in cost to the purchaser or the third party payment source to those situations when a pharmacist dispenses a generic drug after receiving a prescription for a brand name drug. Had the Legislature intended that § 17755(2) only apply in situations when a pharmacist substitutes a generic drug for a prescribed brand name drug, it could have included such language in § 17755(2). Under defendants' interpretation of the statute, the application of § 17755(2) is informed by the other sections of the statute. However, we reject defendants' interpretation because there is no indication in the language of the statute that the provisions limit each other. Rather, the plain language of § 17755(2) makes clear that the Legislature's intent was to make § 17755(2) applicable to instances when a generic drug is dispensed, regardless of whether a brand name drug was prescribed. Thus, because we conclude that § 17755(2) applies whenever a pharmacist dispenses a generic drug, **Gurganus** and the class action plaintiffs were not required to plead transactions that involved "substitutions" as defined by defendants.

Finally, in regard to the qui tam complaint, defendants additionally argue that **Gurganus** failed to state a claim because the qui tam complaint did not allege sufficient information to demonstrate whether the Medicaid claims for generic drugs submitted by defendants complied with the reimbursement levels mandated by the Michigan Medicaid Provider Manual. [23] However, this argument is unavailing because there is no link between Medicaid reimbursement levels and defendants' obligation to comply with § 17755(2). The qui tam complaint alleges only that defendants failed to pass on the savings in cost from generic drugs to the state. **Gurganus** did not allege that defendants failed to comply

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.298   Filed 03/14/14   Page 13 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

with the reimbursement levels mandated by the Medicaid Provider Manual. It is possible that defendants complied with the mandated reimbursement levels, but still failed to comply with § 17755(2). Thus, any absence of information regarding defendants' compliance with the mandated reimbursement levels is irrelevant to **Gurganus's** claim. Accordingly, we reverse the trial court's holding that the qui tam complaint failed to state a claim, and that the class action complaints failed to state a claim under the HCFCA. Development of the alleged facts in the second-amended complaints could justify recovery. *Feyz,* 475 Mich. at 672.

**\*16** In summary, we reverse the trial court's conclusion in the qui tam action that **Gurganus** was not a proper relator because we conclude that the qui tam complaint was not based upon a public disclosure. In the class action lawsuits, we affirm the trial court's conclusion that plaintiffs do not have a private cause of action pursuant to § 17755(2); however, we reverse the trial court in regard to whether plaintiffs have a private cause of action pursuant to the HCFCA, MCL 752.1009, because we conclude MCL 752.1009 provides for a private cause of action. Finally, we reverse the trial court's grant of summary disposition in favor of defendants in all three cases because we conclude that the qui tam complaint and both class action complaints satisfy the applicable pleading standards.

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no taxable costs pursuant to 7.219.

Footnotes

1   On appeal, the class action plaintiffs make no argument regarding the unjust enrichment claim; accordingly, we affirm the trial court's order granting summary disposition in regard to the unjust enrichment claim. See *Etefia v. Credit Technologies, Inc.,* 245 Mich.App 466, 471; 628 NW2d 577 (2001) (issues not sufficiently argued on appeal are deemed abandoned). Similarly, plaintiffs acknowledge that dismissal of the MCPA claim was proper under binding precedent from our Supreme Court. In their brief on appeal, the class action plaintiffs explain that the claim is raised on appeal for the purpose of appealing that issue to the Michigan Supreme Court. We agree with the class action plaintiffs that *Liss v. Lewiston–Richards, Inc.,* 478 Mich. 203, 206; 732 NW2d 514 (2007), requires affirmance of the trial court's order granting summary disposition in favor of defendants in regard to the class action plaintiffs' MCPA claim.

2   We note that while the trial court concluded **Gurganus** was not a proper qui tam relator, its conclusion was not on the basis of the language of MCL 400.610a(13). The trial court did not address whether there had been a public disclosure, whether the complaint relied on a public disclosure, or whether **Gurganus** was an original source. Rather, the trial court focused on the information that **Gurganus** lacked, including knowledge of Michigan-specific transactions. However, the parties raised and argued the public disclosure and original source issues in the trial court. Accordingly, those issues are properly preserved for appellate review. See *Heydon v. MediaOne,* 275 Mich.App 267, 278; 739 NW2d 373 (2007); *Klooster v. City of Charlevoix,* 488 Mich. 289, 310; 795 NW2d 578 (2011). Further, because the parties do not address or rely on the trial court's reasoning in regard to whether **Gurganus** is a proper qui tam relator on appeal, we decline to address the reasoning in the trial court's opinion on this issue.

3   Because there is no Michigan law interpreting MCL 400.610a, the parties cite us to federal law interpreting 31 USC 3730, a provision in the federal False Claims Act that is nearly identical to MCL 400.610a(13). "Decisions from lower federal courts are not binding but may be considered persuasive." *Truel v. City of Dearborn,* 291 Mich.App 125, 136 n 3; 804 NW2d 744 (2010). In this case, we decline to apply federal law because the federal courts lack consensus on the proper interpretation of all the elements of § 3730, and because the approach of the federal courts does not rely on the plain language of the statute, focusing instead on legislative history and intent. Because we find MCL 400.610a unambiguous, we apply the plain language of the statute to determine its meaning. See, e.g., *Odom,* 482 Mich. at 467.

4   MCL 224.20b(1) permits a county board of commissioners to present to the voters a millage for highway, road, and street purposes. Pursuant to MCL 224.20b(2), revenues derived from a tax levy must be allocated and distributed according to a specific formula. A certain portion of the revenue must be given to the cities and villages within the county. In *South Haven,* the defendants failed to allocate the revenues derived from tax levies according to the specified formula, and the plaintiff sought restitution for the revenues it should have received.

5   A "health profession" is defined as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued under this article." MCL 333.16105(3).

6   MCL 333.16111 provides: "This part applies to health professions, but, except for [MCL 333.16201; MCL 333.16216; MCL 333.16299; MCL 333.16301; MCL 333.16303; MCL 333.16305; MCL 333.16307; MCL 333.16309; MCL 333.16313] does not apply to a pharmacy, dispensing prescriber, or drug manufacturer or wholesaler who is regulated by part 177." Accordingly, because

Case 1:13-cv-00294-RJJ    ECF No. 44-1, PageID.299    Filed 03/14/14    Page 14 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

|   |   |
|---|---|
|   | MCL 333.16111 does not specifically include "pharmacist" in the list of health professionals regulated by Part 177, we conclude that pharmacists are regulated by Part 161. See *Hoerstman Gen. Contracting, Inc. v. Hahn,* 474 Mich. 66, 74 n 8; 711 NW2d 340 (2006) (stating that the expression of one thing is the exclusion of another). |
| 7 | The disciplinary subcommittee is within the Board of Pharmacy, which is within LARA. See MCL 333.17721; MCL 333.16104(4); MCL 333.16216(1); MCL 333.17701(2); MCL 333.17763(1); MCL 333.17768(1). |
| 8 | Possible sanctions for "fraud or deceit in obtaining or attempting to obtain third party reimbursement," MCL 333.16221(d)(*iii* ), include "[f]ine, probation, denial, suspension, revocation, community service, or restitution," MCL 333 .16226(1), and possible sanctions for "[m]isrepresentation to a consumer or patient or in obtaining or attempting to obtain third party reimbursement in the course of professional practice," MCL 333.16221(e)(*i* ), include "[r]eprimand, fine, probation, limitation, suspension, community service, denial, or restitution," MCL 333.16226(1). |
| 9 | A "health care insurer" is defined as "any insurance company authorized to provide health insurance in this state or any legal entity which is self-insured and providing health care benefits to its employees." MCL 752.1002(f). In the second-amended complaints, the class action plaintiffs City of Lansing and Dickinson Press, Inc. alleged that they were "health care insurers" as defined by the HCFCA. |
| 10 | We analyze the sufficiency of all three second-amended complaints together because the complaints generally make identical allegations, and all plaintiffs' claims rely on proof that defendants violated § 17755(2). |
| 11 | We note that in dismissing the complaints, the trial court did not specify whether it was evaluating the complaints on the basis of the general pleading standard set forth in MCR 2.111(B) or on the basis of the heightened pleading standard applicable to fraud claims set forth in MCR 2.112(B). However, defendants raised this issue in their motion for summary disposition. Generally, an issue is properly preserved for appellate review only when it is raised in and addressed and decided by the trial court. *Polkton Charter Twp. v. Pellegrom,* 265 Mich.App 88, 95; 693 NW2d 170 (2005). However, we may overlook preservation requirements when consideration of an issue is necessary to a proper determination of the case or where an issue raises a question of law and all the facts necessary for resolution of the issue have been presented. *Heydon,* 275 Mich.App at 278. Further, the Michigan Supreme Court has recognized that in cases where issues were raised before the trial court but not actually addressed or decided by the trial court, the parties "should not be punished for the omission of the trial court." *Klooster,* 488 Mich. at 310, citing *Peterman v. Dep't. of Natural Resources,* 466 Mich. 177, 183; 521 NW2d 499 (1994). |
| 12 | In light of our conclusion that the class action plaintiffs do not have a private cause of action under § 17755(2) itself, we need not consider whether the class action complaints stated a claim in that regard. To state a claim under the HCFCA, a plaintiff must allege (1) that a person received a health care benefit or payment from a health care corporation or health care insurer and (2) that the person knew he or she was not entitled to receive or be paid the benefit or payment or that the person knowingly presented or caused to be presented a claim that contained a false statement. See MCL 752.1009. To state a claim under the relevant section of the MFCA, a plaintiff must allege that (1) a person made or presented or caused to be made or presented to an employee or officer of the State a claim under the social welfare act and (2) the person knew the claim was false. See MCL 400.607(1). |
| 13 | The only element of the HCFCA claims and the MFCA claim that is disputed in this case is the false claim element. However, we note that both complaints adequately pleaded the undisputed elements of the claims. The class action complaints allege that defendants operate a significant number of retail pharmacies in Michigan, and that plaintiffs are health care insurers who purchased a significant number of generic drugs from defendants, and the qui tam complaint alleged a person made or presented or caused to be made or presented to an employee or officer of the State a claim under the social welfare act by alleging that defendants submitted claims for benefits or payments under Michigan's Medicaid program, and that defendants received Medicaid benefits or payments. |
| 14 | Because of the similarity of the complaints and the causes of action, we refer to all the class action plaintiffs and **Gurganus** collectively as "plaintiffs" in our analysis of the sufficiency of the second-amended complaints in all three cases unless otherwise indicated. |
| 15 | We note that the "purchaser" in an HCFCA case is a health care corporation or a health care insurer, and the "purchaser" in an MFCA case is an employee or officer of the State. |
| 16 | The class action plaintiffs allege that they engaged in "nearly 100,000" prescription drug transactions over the course of the six-year statute of limitations period with defendants in the Rite Aid class action lawsuit, and that they engaged in "approximately 150,000" prescription drug transactions over the course of the six-year statute of limitations period with defendants in the CVS class action. The qui tam complaint alleges that during the last quarter of 2008, defendants submitted more than 2,000 Medicaid claims to the state that violated § 17755(2). The qui tam complaint further alleges that during the statutory limitation period, defendants "have engaged in millions of prescription drug transactions with Medicaid beneficiaries for which the State of Michigan is the purchaser and/or third-party payment source." |
| 17 | The Rite Aid class action lawsuit identified Fosamax, Omnicef, Allegra, Proscar, and Flonase as the specific examples of brand name drugs. The CVS class action used the same five drugs as the Rite Aid class action, and also used Risperdal as an additional example. The qui tam action used Fosamax, Omnicef, Cefzil, Allegra, and Flonase as its brand name drug examples. |

Case 1:13-cv-00294-RJJ   ECF No. 44-1, PageID.300   Filed 03/14/14   Page 15 of 15

**State ex rel. Gurganus v. CVS Caremark Corp., Not Reported in N.W.2d (2013)**

18  MCL 333.17755(2) requires a pharmacist to pass on the savings in cost to the purchaser or to the third party payment source when a generic drug is dispensed, and provides that the "savings in cost is the difference between the wholesale cost to the pharmacist of the [two] drug products."

19  While this issue was not specifically addressed by the trial court, we may overlook preservation requirements when consideration of an issue is necessary to a proper determination of the case or where an issue raises a question of law and all the facts necessary for resolution of the issue have been presented, *Heydon,* 275 Mich.App at 278, and we elect to address this issue because it is a question of law and no additional facts are necessary for us to address it.

20  In support of their argument that violation of § 17755(2) does not constitute a "false claim," defendants also rely on federal law interpreting the FCA. We find the law relied upon by defendants distinguishable because it does not address any statute, rule, or regulation that is analogous to § 17755(2); accordingly, we decline to follow it under the circumstances present in this case. See *Truel,* 291 Mich.App at 136 n 3 (decisions of lower federal courts are not binding upon this Court).

21  The HCFCA provides that a "person shall not make or present or cause to be made or presented to a health care corporation or health care insurer a claim for payment of health care benefits knowing the claim to be false." MCL 752.1003(1). The MFCA provides that "[a] person shall not make or present or cause to be made or presented ... a claim ... knowing the claim to be false." MCL 400.607.

22  Deceptive is defined by the HCFCA as any claim "which contains a statement of fact or which fails to reveal a material fact, which statement or failure leads the health care corporation or health care insurer to believe the represented or suggested state of affair to be other than it actually is." MCL 752.1002(b). The MFCA defines deceptive as "making a claim or causing a claim to be made under the social welfare act ... which contains a statement of fact or which fails to reveal a material fact, which statement or failure leads the department to believe the represented or suggested state of affair to be other than it actually is." MCL 400.602(c).

23  The Michigan Medicaid Provider Manual outlines how Medicaid claims are processed, including reimbursement amounts.

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.